LEO SOUCY *vs.* LORENZO A. ALIX *d.b.a.*
APEX ROOFING & SHEET METAL WORKS.

JULY 25, 1952.

PRESENT: Flynn, C. J., Capotosto, Baker and Condon, JJ.

FLYNN, C. J.   This action of trespass on the case for negligence was brought by an employee against his employer to recover for personal injuries and other damages resulting from an accident arising out of and in the course of his employment.   It was tried in the superior court where a jury returned a verdict for the plaintiff in the amount of $4,000.   Thereafter the trial justice granted defendant's motion for a new trial unless plaintiff remitted all of the verdict in excess of $1,800.   The plaintiff filed such remittitur and the case is here on defendant's bill of exceptions to the denial of his motion for a new trial unconditionally, to the trial justice's fixing of the damages in the amount of $1,800, and to other rulings during the trial.

The plaintiff's declaration is in three counts alleging among other essential facts that defendant was negligent in failing (1) to furnish a reasonably safe place to work; (2) to furnish suitable appliances; and (3) to employ a fit person to plan and supervise the work.   The declaration also alleges that defendant employed more than three persons regularly, but he nevertheless elected not to become subject to the provisions of the workmen's compensation act, general laws 1938, chapter 300, thus making it necessary to bring this action at law.

The evidence for plaintiff showed generally that defendant was the sole owner and operator of the roofing company; that he employed three or more persons regularly in the course of business; that plaintiff for a considerable time prior to December 3, 1947 was employed by him as a laborer, whose duty included tending a kettle in which asphalt was

heated and prepared for use on roofing jobs; and that his full wages were $37 to $38 per week.

On December 3, 1947 defendant was laying a roof in the city of Central Falls, which work was in charge of his foreman Aurele Lapierre. The kettle in which the asphalt was to be heated was permanently attached to skids and was resting on the floor of a dump truck, the floor thereof being 3 or 3½ feet above the ground. The kettle itself was 5 or 5½ feet long, 3 feet wide, and about 3 to 3½ feet high. On the outside it had a gauge or thermometer and a faucet, the latter being approximately 5½ feet from the ground. The plaintiff's duty was to heat the asphalt in the kettle by use of kerosene fuel mixed with air that was pumped into the blower for forced draft. Apparently the asphalt would run freely at a temperature of about 400° F. and could be withdrawn from the kettle through the faucet into pails for easy handling.

The plaintiff reminded the foreman of the difficulty in operating and controlling the kettle and its appliances while it was on the truck, recalled to him a former instance when the asphalt had caught fire for that reason; and told him it could be operated more safely if it was on the ground. He also testified as to another instance when the foreman was on the job and a drop of asphalt had landed on the plaintiff's face because he was obliged to operate while looking up toward the pail rather than from a position above the faucet looking down into the pail while the asphalt was being withdrawn.

The foreman, however, stated that the kettle was too heavy to be lifted from the truck in the morning and put back at night, particularly when the job was not a big one. He ordered plaintiff to prepare the kettle for heating while it was on the truck. Acting under his orders plaintiff heated the asphalt and had withdrawn one pail. The foreman ordered another pail immediately and, for some reason, while the asphalt was running into the pail a dense amount of steam arose to obscure the faucet. The plaintiff

became confused by the rising steam, and with his vision of the faucet thus clouded he attempted to shut it off. In doing so he put his hand under the hot asphalt and received second and third degree burns on the back of certain portions of the right hand and fingers.

He was treated at the hospital where his injury was dressed, and on the next day he was taken by defendant to the latter's doctor, Dr. Albert J. Gaudet, who continued treatments for substantially five weeks. During such treatments plaintiff, being in need of income, continued light work as well as he could. He was finally laid off about a week after the accident, and then he attempted to work at various jobs but was unable to perform them because of the condition of his hand and forearm. Apparently during the year following he worked a total of only a few weeks and earned an average of $18 to $25 per week.

About a year after the accident, because his hand and arm still pained and prevented him from working, he consulted Dr. John E. Donley who treated him weekly for approximately five months. At the time of trial that doctor testified in substance that plaintiff was 90 per cent improved; that the muscles in the back of his forearm and elbow were tied into the tendons and nerves of the back of his hand and fingers; and that a second-degree burn on the back of the hand and fingers would be an adequate cause for the sensitivity and the injury to the muscles and forearm which he had been treating.

On the other hand the evidence for defendant tended to show that in general there was no more danger in operating the kettle on the truck than on the ground; that the reason why the foreman testified he always stood on the floor of the truck while operating the kettle was because he was only five feet four inches tall whereas the plaintiff was about six feet tall; that plaintiff's only injury was a burn on the back of his hand for which he was discharged as cured after treatment for five weeks by Dr. Gaudet, who was then told by plaintiff that his hand was as good as ever; that

he never complained to the hospital or to Dr. Gaudet of any injury to the arm; that he never told Dr. Donley that his hand and not his arm had been burned; that he was able to and did work for defendant a week after the injury and, after being laid off with other employees, plaintiff was employed at various other jobs; that the injury was caused not by the location or unsafe condition of the kettle on the truck but because plaintiff in his confusion had put his hand under the hot asphalt; and that other evidence conflicted with the testimony of plaintiff on matters affecting his credibility.

We find from an examination of the transcript that there was ample evidence to justify the conclusion that defendant was eligible to come within the provisions of the workmen's compensation act but had elected not to accept its terms. The defendant does not seriously contend to the contrary. Therefore the instant case must be considered apart from any question whether plaintiff's injury resulted from his own contributory negligence, or the negligence of a fellow servant, or from an assumption of the risk, since in the circumstances by virtue of the provisions of the workmen's compensation act such defenses were not open to defendant.

The defendant's exceptions numbered 1 and 2 relate to the denial of his motion for a new trial unconditionally and to the trial justice's fixing of the damages at $1,800 which he contends is still grossly excessive. These exceptions will be considered together. The trial justice in his decision reviewed the evidence, passed favorably on plaintiff's credibility and unfavorably, at least by inference, upon defendant's credibility. He expressly stated that he had two definite conclusions at the time of trial, namely, that there was ample evidence to justify the jury's verdict on the question of liability and that the award of damages was grossly excessive. These conclusions, he stated, had remained after listening to the arguments of counsel on defendant's motion for a new trial.

We have examined his decision and it is apparent that

the trial justice performed his duty in accordance with the well-recognized rule that on a motion for a new trial he should pass his independent judgment on the evidence, the credibility of the witnesses, and the jury's verdict. Unless he misconceived the law or overlooked material evidence, we cannot say that his appraisal of the conflicting evidence was clearly wrong.

On the question of liability he apparently followed the law which he enunciated in his charge to the jury and to which the defendant took no exception. Nor can we find wherein he overlooked or misconceived any material evidence. It is true that there is not a great deal of precise testimony as to the appliances and the relative safety of the place in which to work when the kettle was on the truck as distinguished from its placement on the ground. However, the testimony, though general, was probably understood better by the jury and trial justice because they had the benefit of a view of the kettle as it was placed upon the truck.

The chief question here apparently was the ability to operate and control the kettle and its appliances with reasonable safety when withdrawing asphalt. The defendant's foreman at first testified that when he engaged in such operation of the kettle he always stood on the floor of the truck, since it was *safer* to operate from that position than from a position on the ground. In this he corroborated the substance of plaintiff's testimony. It is true that later he sought to explain this testimony by stating that he was only five feet four inches tall, and that unless he stood on the truck he could not see into the pail while the asphalt was being withdrawn. But the fact still remained, even on this explanation, that he thought it reasonably necessary to be able to look into the pail from above the faucet in order to be in a position to safely control its appliances, especially in an emergency. That fact, together with his refusal to accept the notice given him by plaintiff as to the possible danger in operating the kettle from a position

on the truck, seems to us to prevent a conclusion that there was no evidence to support the declaration at least on the issues under two of the counts.

In our judgment the case is close on the question of liability. However, in the peculiar circumstances, we are bound to consider the evidence apart from certain common-law defenses which are not open to defendant. On such consideration we cannot say that there was no evidence to support the allegation of defendant's failure to provide a safe place to work, or to say that plaintiff's evidence corroborated as above mentioned by the foreman did not outweigh that for the defendant on this issue. Accordingly the decision on liability should stand.

On the question of damages the trial justice concluded that the verdict to that extent resulted from sympathy and ordered a substantial remittitur. Whether it is still grossly excessive depends, even according to defendant's argument, largely on whether it is proper to include the injuries to the muscles of the forearm and elbow, and the treatment, cost and loss incidental thereto, as a part or a reasonable consequence of the injury to the back of his hand.

The testimony of Dr. Donley makes it clear that there is a close relationship between the tendons and nerves in the back of the hand and certain muscles in the forearm and elbow which he had treated. Apparently this is not contradicted. The conflict in the evidence comes on the question whether plaintiff told the hospital or Dr. Gaudet that he had been injured in the arm as a result of the burning, and whether he told Dr. Donley that he had been burned on the arm or on the hand. In view of the appraisal by the trial justice of the plaintiff's credibility, which is not an unreasonable inference, we cannot say that plaintiff was precluded from recovering for the treatments given to him by Dr. Donley and the incidental loss. If these items are included the sum of $1,800 may appear to be generous but we cannot say that it is still grossly excessive. These exceptions are overruled.

Exceptions 3 and 4 relate to the admission of evidence concerning what happened at two other jobs performed by defendant where the same foreman was in attendance. The defendant argues that the evidence was not admissible, but in this contention he misconceives the purpose of such testimony. It was not introduced to establish negligence here because of some alleged negligence on two other occasions. It was intended only to show notice to defendant through his foreman of the possible danger or lack of reasonable safety in operating the appliances of the kettle if he insisted upon having the work performed while the kettle was on the truck. In our judgment by analogy it was admissible under *McGarrity* v. *N. Y., N. H. & H. R. R.*, 25 R. I. 269. There it was held that a plaintiff may properly show the condition of the machine or appliance before the time of accident in order to prove that defendant knew, or ought to have known, of the danger connected therewith, and his failure or refusal to remedy the danger or defect was negligence. These exceptions are overruled.

Exception 5 relates to testimony including the condition of plaintiff's arm. In view of our previous discussion of this element of damage and of the testimony of Dr. Donley which connected it with the injury to the hand, we cannot say that it was error to allow such testimony. This exception is overruled.

Exception 6 on its face relates to the allowance of the following question: "You find it safer to operate that kettle upon truck, don't you? * * * A. Yes." While this calls for a comparison, it should be considered in connection with the notice of danger and risk given to the foreman and the latter's reason for his own operation of the kettle from a position above the faucet so as to be able to look down into the pail in the interest of safety. Thus viewed the evidence if erroneous is not prejudicial. This exception is overruled.

Exception 7 relates to the refusal to strike out the following question: "Mr. Soucy, after you were burned with asphalt in December, 1947, did you receive any injury to

your right forearm since that time? A. No." In view of defendant's inferential claim that the injury to his forearm, as treated by Dr. Donley, came from another accident, we think it was proper for plaintiff to be permitted to show, if it were the fact, that the injury to his forearm was not caused by any accident other than the one in question. This exception is overruled.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict as reduced by the remittitur.

*Smith & Botelle, Archie Smith,* for plaintiff.

*Fergus J. McOsker,* for defendant.